**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**In re:**

**CASE NO.: 8:23-bk-03640-CPM**

**WALKER PIZZA COMPANY, LLC,**

**Debtor.**
**______________________________/**

**ANGELA WELCH, AS CHAPTER 7 TRUSTEE,**

**Adv. P. No. 8:24-________-CPM**

**Plaintiff,**

**v.**

**JONATHAN WALKER,**

**and**

**WABASH PIZZERIA & ICE CREAM COMPANY, LLC**

**Defendants.**
**________________________________/**

## COMPLAINT

NOW COMES Plaintiff, Angela Welch, as Chapter 7 Trustee ("**Plaintiff**"), by and through her undersigned counsel, and pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure, and hereby sues Defendants, Jonthan Walker ("**Walker**") and Wabash Pizzeria & Ice Cream Company, LLC ("**Wabash**") (together, Walker and Wabash shall be referred to as "**Defendants**"), and alleges:

**JURISDICTION AND VENUE**

1. Plaintiff is the duly qualified and acting Trustee in the matter captioned as *In re Walker Pizza Company*, Case Number 8-23-bk-03640-CPM, which is pending in the United States Bankruptcy Court, Middle District of Florida, Tampa Division (the "**Bankruptcy Case**").

2. Upon Plaintiff's information and belief, Walker is an individual with his dwelling house or usual place of abode located at 610 Jessanda Circle, Lakeland, Florida 33813.

3. Upon Plaintiff's information and belief, Wabash was a limited liability company organized under the laws of the State of Florida.

4. Upon Plaintiff's information and belief, Walker is or was the sole member of Wabash.

5. Upon Plaintiff's information and belief, Walker is the registered agent authorized to accept service of process on behalf of Wabash and whose address for purposes of service is 217 North Wabash Avenue, Lakeland, Florida 33815.

6. Plaintiff perfects service on Defendant pursuant to the provisions of Rule 7004(b)(1) and (3) of the Federal Rules of Bankruptcy Procedure.

7. The Court has jurisdiction over the subject matter of this proceeding pursuant to the provisions of 28 U.S.C. § 1334(a) and 28 U.S.C. §§ 157(b)(2)(A) and (H).

8. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (H).

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

10. Plaintiff consents to entry of final orders and judgments by the Bankruptcy Court pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure.

**FACTS COMMON TO ALL COUNTS**

11. On August 22, 2023 (the "**Petition Date**"), Walker Pizza Company, LLC ("**Debtor**") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

12. Plaintiff was subsequently appointed as the Chapter 7 Trustee in the Bankruptcy Case.

13. On October 10, 2023, the Trustee conducted the Section 341 Meeting of Creditors of the Debtor (the "**MOC**").

14. The MOC was continued to October 17, 2023 to allow for further examination of the Debtor, and was subsequently finally concluded on October 31, 2023.

15. In connection with the MOC and upon request of the Trustee, Walker and the Debtor produced certain books and financial records of the Debtor to the Trustee.

16. The factual allegations herein are based upon the Trustee's review of those documents, the testimony of Walker at the MOC and through the Trustee's own independent investigation.

17. The Debtor formerly operated as a restaurant specializing in the sales of pizza.

18. At all relevant times, Walker was the sole member of the Debtor and responsible for the day-to-day operations of the Debtor, and the only signatory or person authorized to make transactions concerning the Debtor's bank accounts and funds.

19. In or about the summer of 2021, the Debtor began experiencing financial difficulties and borrowed the sum of $32,707.00 from the United States Small Business Administration ("**SBA**").

20.     Upon information, said loan was a "Restaurant Revitalization Fund" loan which was specifically designed to help restaurants whose business operations had significantly decreased because of Covid-19 related closures and crowd size restrictions.

21.     Thereafter, the Debtor continued to experience financial difficulties and, in or about July of 2022, the Debtor began taking out a series of merchant cash advance loans from various lenders, the first being a loan from McKenzie Capital on or about July 12, 2022 in the principal amount of approximately $182,351.00.

22.     From October 3, 2022 to January 11, 2023, the Debtor took additional merchant loans from Velocity Capital, Surfside Capital, Zahav Asset Management, Capital Assist and Silverline Services, in the total approximate amount of $252,571.00.

23.     The loan proceeds from each of these lenders were deposited into the Debtor's operating financial account with Bank of America ending 1863 (the "**BOA Account**").

24.     On or about August 1, 2022, Walker (in his individual capacity) entered into a Purchase and Sale Agreement (the "**PSA**") with Bert Neuman and Liliya Neuman (together, the "**Neumans**") for the purchase and sale of the membership units of Wabash.  A true and accurate copy of the PSA is attached hereto as **Exhibit "A"** and incorporated by reference herein.

25.     The Neumans were the members of Wabash at the time of execution of the PSA.

26.     Pursuant to the PSA, Walker agreed to buy, and the Neumans agreed to sell, all of the membership units of Wabash for the sum of $69,000.00 (the "**Purchase Price**").

27.     On or about July 13, 2022, the Debtor issued Check Number 1153 in the amount of $6,900.00 from the Debtor's BOA Account made payable to Wabash as and for the deposit for the purchase and sale of the membership unit of Wabash (the "**Deposit Transfer**").  A true and

accurate copy of the Deposit Transfer is attached hereto as **Exhibit "B"** and incorporated by refence herein.

28.     Although the Deposit Transfer was made payable to Wabash, such transfer was made for the benefit of Walker for the specific purpose of funding his purchase of the membership units of Wabash from the Neumans pursuant to the PSA.

29.     On August 1, 2022, Walker and the Neumans consummated the sale and Walker purchased 100% of the membership units of Wabash from the Neumans.

30.     On or about August 1, 2022 the Debtor issued Check Number 1154 in the amount of $62,100.00 payable to the Neumans, but on behalf of Walker, as and for the balance of the Purchase Price (the "**Closing Transfer**"). A true and accurate copy of the Closing Transfer is attached hereto as **Exhibit "B"** and incorporated by refence herein.

31.     The Deposit Transfer was made to and for the benefit of Walker and not of the Debtor.

32.     Thereafter, the Debtor continued to make additional transfers from its BOA Account to either Walker, other third parties, or directly to Wabash, as follows:

   a.     On August 4, 2022, the Debtor caused the sum of $20,000.00 to be transferred from the Debtor's BOA Account to Walker's personal bank account;

   b.     On August 8, 2022, the Debtor issued Check Number 1156 in the amount of $3,470.00 to Bert Neuman for a coffee maker related his purchase of the membership units of Wabash (*see* Exh. C);

   c.     On August 5, 2022, the Debtor issued Check Number 1155 in the amount of $1,575.00 to Sterling Plaza as and for rent for Wabash's lease of its own premises (*see* Exh. C);

   d.     On August 10, 2022, the Debtor issued Check Number 1157 in the amount of $500.00 to Jamie Barner for a coin machine to be used at the Wabash location (*see* Exh. C);

e.    On October 11, 2022, the Debtor transferred the sum of $8,000 via Zelle directly to Wabash;

f.    On November 23, 2022, the Debtor transferred the sum of $2,500 via Zelle directly to Wabash;

g.    On November 28, 2022, the Debtor issued Check Number 1158 in the amount of $5,300.00 to Dixie Signs for a new sign for Wabash's storefront location;

h.    On March 1, 2023, the Debtor transferred the sum of $3,000.00 via Zelle directly to Wabash;

i.    On March 8, 2023, the Debtor transferred the sum of $1,300.00 via Zelle directly to Wabash;

j.    On March 9, 2023, the Debtor transferred the sum of $300.00 via Zelle directly to Wabash;

k.    On March 15, 2023, the Debtor transferred the sum of $600.00 via Zelle directly to Wabash;

l.    On March 22 2023, the Debtor transferred the sum of $2,700.00 via Zelle directly to Wabash; and

m.    On March 24, 2023, the Debtor transferred the sum of $400.00 via Zelle directly to Wabash.

33.    In total, and in addition to the Deposit Transfer and the Closing Transfer, the Debtor caused the sum of $49,645.00 to be transferred from its Debtor's BOA to either Walker, third parties, or directly to Wabash (the "**Transfers**").

34.    From the Transfers, it appears the sum of $92,470.00 was transferred to or for the benefit of Walker (the "**Walker Transfers**").

35.    Specifically, the Walker Transfers totaling $92,470.00 are compromised of the Deposit Transfer ($6,900.00), the Closing Transfer ($62,100.00), the $20,000.00 transfer made on August 4, 2022 from the Debtor's BOA Account to Walker's personal account, and the $3,470.00

transfer made on August 8, 2022 from the Debtor's BOA Account to the Neumanns to purchase a coffee maker.

36. From the Transfers, it appears the sum of $26,175.00 was transferred to or for the benefit of Wabash (the "**Wabash Transfers**").

37. The Wabash Transfers totaling $26,175.00 are compromised of the transfers listed in Paragraphs 29(c)-(m) above.

38. All of the Transfers are avoidable transfers pursuant to 11 U.S.C. § 548 for which the Trustee may recover the value of the property transferred pursuant to 11 U.S.C. § 550, as further set forth below.

39. At all material times from the time immediately preceding the first of the Transfers through and including the last date of the Transfers, the Debtor was insolvent.

40. There exists the following common circumstantial indicia of fraudulent intent that, when taken together, indicate the existence of actual fraud:

(i) The Debtor was insolvent and/or had or other unmanageable indebtedness at the time of the Transfers;

(ii) Walker was the sole-member and insider of the Debtor; and

(iii) There was no consideration for the Transfers or there existed a vast disparity in value between the sums transferred and the consideration received.

41. There are actual creditors of the Debtor that could avoid the Transfers pursuant to Florida law.

42. Specifically, on its Schedule E/F, the Debtor listed unsecured creditors with claims in the amount of $464,188.28.

43. At the time of the filing of this Complaint, unsecured claims have been filed in the Bankruptcy Case against the Debtor in the amount of $49,113.26.

44. For these reasons and those more fully set forth below, the Transfers should be declared void as a matter of law, and the Trustee should be entitled to recover the value of the Transfer from the respective Defendants.

45. During the course of this adversary proceeding, Plaintiff may learn (through discovery or otherwise) of additional avoidable transfers made to Defendants and/or other third parties as immediate or mediate transferees. It is Plaintiff's intention to avoid and recover all transfers made by the Debtor of an interest of the Debtor in property and to or for the benefit of Defendants or any other transferee. Plaintiff therefore reserves her right to amend this Complaint to include, if necessary, (i) further information regarding the Transfers, and/or (ii) additional transfers to Defendants.

**COUNT I**

**(Avoidance of Fraudulent Transfer Against Walker Pursuant to 11 U.S.C. § 548(a)(1)(A))**

46. Plaintiff hereby incorporates paragraphs 1 – 45 above as if fully re-written and restated at length herein.

47. Debtor, with actual intent to hinder, delay, or defraud creditors of the estate, made the Walker Transfers to or for the benefit of Walker in order to place such assets outside the reach of Debtor's creditors.

48. Moreover, there exists the following common circumstantial indicia of fraudulent intent that, when taken together, indicate the existence of actual fraud:

(i) The Walker Transfers comprised all or substantially all of the Debtor's non-exempt property or equity in such property;

(ii) Debtor was insolvent and/or had or other unmanageable indebtedness at the time of the Walker Transfers;

(iii)    A special relationship existed between the Debtor and Walker in that Walker is the Debtor's sole member and an insider of the Debtor;

(iv)    There was an absence of consideration for the Walker Transfers and the Debtor and Walker knew or should have known that Debtor's outstanding creditors would not be paid as a result of the Walker Transfers; and

(v)     There was no consideration for the Walker Transfers or there existed a vast disparity in value between the Walker Transfers and the consideration received.

WHEREFORE, Plaintiff respectfully requests entry of a judgment in favor of Plaintiff and against Walker (i) declaring the Walker Transfers to be void as a matter of law pursuant to 11 U.S.C. § 548(a)(1)(A), (ii) ordering Walker to surrender the value of the Walker Transfers to Plaintiff, or $92,470.00, plus the costs of filing this action of $350.00, for a total amount of $92,820.00, and (iii) granting such further relief as to which the Plaintiff may be entitled.

## COUNT II

### (Avoidance of Fraudulent Transfer Against Walker Pursuant to 11 U.S.C. § 548(a)(1)(B))

49.    Plaintiff hereby incorporates paragraphs 1 – 45 and paragraphs 47 – 48 above as if fully re-written and restated at length herein.

50.    The Debtor received less than reasonably equivalent value from Walker at the time of the Walker Transfers.

51.    The Debtor:

(i)     Was insolvent on the date that each of the Walker Transfers were made, or became insolvent as a result of the Walker Transfers;

(ii)    Was engaged in business or a transaction or was about to engage in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital; and/or

(iii)   Intended to incur, or believed that she would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

WHEREFORE, Plaintiff respectfully requests entry of a judgment in favor of Plaintiff and against Walker (i) declaring the Walker Transfer to be void as a matter of law pursuant to 11 U.S.C. § 548(a)(1)(B), (ii) ordering Walker to surrender the value of the Walker Transfers to Plaintiff, or $92,470.00, plus the costs of filing this action of $350.00, for a total amount of $92,820.00, and (iii) granting such further relief as to which the Plaintiff may be entitled.

**COUNT III**

**(Recovery of the Walker Transfers pursuant to 11 U.S.C. § 550)**

52. Plaintiff hereby incorporates paragraphs 1 – 45, paragraphs 47 – 48 and paragraphs 50 – 51 above as if fully re-written and restated at length herein.

53. Section 550 of the Bankruptcy Code provides that to the extent that a transfer(s) is avoided under section . . . 548 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee.

54. The Walker Transfers constitute a series of transfer for which the Trustee may recover the value of same from Walker.

55. To the extent the Walker Transfers are avoided, Plaintiff is entitled to a monetary judgment against Walker, or any such other immediate or mediate transferee that may be gleaned through discovery, in an amount equal to the Walker Transfers totaling $92,470.00, plus the Trustee’s costs incurred in this matter, or such other amount as this Court deems just and proper.

WHEREFORE, Plaintiff respectfully requests entry of a judgment in favor of Plaintiff and against Walker (i) declaring the Walker Transfers to be void as a matter of law pursuant to 11 U.S.C. § 548, (ii) ordering judgment to be entered against Walker in an amount of no less than the

value of the Walker Transfers or $92,470.00, plus the costs of filing this action of $350.00, for a total amount of $92,820.00, and (iii) granting such further relief as to which the Plaintiff may be entitled.

**COUNT IV**

**(Unjust Enrichment)**

56. Plaintiff hereby incorporates by reference paragraphs 1 – 45, paragraphs 47 – 48, paragraphs 50 – 51 and paragraphs 53 – 55 above as if fully rewritten and restated at length herein

57. To the extent Plaintiff is not entitled to recovery of the funds under other Counts of this Complaint, she lacks an adequate remedy at law.

58. The Debtor conferred a benefit upon Walker by receiving the benefit of the Walker Transfers in the amount of $92,470.00 and retaining same despite failing to provide the Debtor with any equivalent exchange of value.

59. Under these circumstances, it is inequitable for Walker to retain the benefit of the Walker Transfers without paying equivalent value to the estate.

WHEREFORE, Plaintiff respectfully demands that judgment be entered in favor of Plaintiff and against Walker (i) awarding to Plaintiff an amount no less than $92,470.00, (ii) awarding Plaintiff her reasonable attorneys' fees and costs herein, including fees and costs incurred in connection with any appeal or further bankruptcy proceedings in the event she is the prevailing party in this adversary proceeding, and (iii) awarding Plaintiff any such further relief as may be deemed appropriate.

**COUNT V**

**(Avoidance of Fraudulent Transfer Against Wabash Pursuant to 11 U.S.C. § 548(a)(1)(A))**

60. Plaintiff hereby incorporates paragraphs 1 – 45, paragraphs 47 – 48, paragraphs 50 – 51, paragraphs 53 – 55 and paragraphs 57 – 59 above as if fully re-written and restated at length herein.

61. Debtor, with actual intent to hinder, delay, or defraud creditors of the estate, made the Wabash Transfers to or for the benefit of Wabash in order to place such assets outside the reach of Debtor's creditors.

62. Moreover, there exists the following common circumstantial indicia of fraudulent intent that, when taken together, indicate the existence of actual fraud:

(vi) The Wabash Transfers comprised all or substantially all of the Debtor's non-exempt property or equity in such property;

(vii) Debtor was insolvent and/or had or other unmanageable indebtedness at the time of the Wabash Transfers;

(viii) A special relationship existed between the Debtor and Wabash in that Walker is the sole member of the Debtor and Wabash and therefore, an insider of the Debtor;

(ix) There was an absence of consideration for the Wabash Transfers and the Debtor and Wabash, through Walker knew or should have known that Debtor's outstanding creditors would not be paid as a result of the Wabash Transfers; and

(x) There was no consideration for the Wabash Transfers or there existed a vast disparity in value between the Wabash Transfers and the consideration received.

WHEREFORE, Plaintiff respectfully requests entry of a judgment in favor of Plaintiff and against Wabash (i) declaring the Wabash Transfers to be void as a matter of law pursuant to 11 U.S.C. § 548(a)(1)(A), (ii) ordering Walker to surrender the value of the Walker Transfers to Plaintiff, or $26,175.00, plus the costs of filing this action of $350.00, for a total of $26,525.00, and (iii) granting such further relief as to which the Plaintiff may be entitled.

**COUNT VI**

**(Avoidance of Fraudulent Transfer Against Wabash Pursuant to 11 U.S.C. § 548(a)(1)(B))**

63. Plaintiff hereby incorporates paragraphs 1 – 45, paragraphs 47 – 48, paragraphs 50 – 51, paragraphs 53 – 55 and paragraphs 57 – 59 and paragraphs 61 – 62 above as if fully re-written and restated at length herein.

64. The Debtor received less than reasonably equivalent value from Wabash at the time of the Wabash Transfers.

65. The Debtor:

(iv) Was insolvent on the date that each of the Wabash Transfers were made, or became insolvent as a result of the Wabash Transfers;

(v) Was engaged in business or a transaction or was about to engage in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital; and/or

(vi) Intended to incur, or believed that she would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

WHEREFORE, Plaintiff respectfully requests entry of a judgment in favor of Plaintiff and against Wabash (i) declaring the Wabash Transfers to be void as a matter of law pursuant to 11 U.S.C. § 548(a)(1)(B), (ii) ordering Wabash to surrender the value of the Wabash Transfers to Plaintiff, or $26,175.00, plus the costs of filing this action of $350.00, for a total of $26,525.00, and (iii) granting such further relief as to which the Plaintiff may be entitled.

**COUNT VII**

**(Recovery of the Wabash Transfers pursuant to 11 U.S.C. § 550)**

66. Plaintiff hereby incorporates paragraphs 1 – 45, paragraphs 47 – 48, paragraphs 50 – 51, paragraphs 53 – 55, paragraphs 57 – 59, paragraphs 61 – 62 and paragraphs 64 – 65 above as if fully re-written and restated at length herein.

67. Section 550 of the Bankruptcy Code provides that to the extent that a transfer(s) is avoided under section . . . 548 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee.

68. The Wabash Transfers constitute a series of transfer for which the Trustee may recover the value of same from Wabash.

69. To the extent the Wabash Transfers are avoided, Plaintiff is entitled to a monetary judgment against Wabash, or any such other immediate or mediate transferee that may be gleaned through discovery, in an amount equal to the Wabash Transfers totaling $26,175.00, plus the Trustee's costs incurred in this matter, or such other amount as this Court deems just and proper.

WHEREFORE, Plaintiff respectfully requests entry of a judgment in favor of Plaintiff and against Wabash (i) declaring the Wabash Transfers to be void as a matter of law pursuant to 11 U.S.C. § 548, (ii) ordering judgment to be entered against Wabash in an amount of no less than the value of the Wabash Transfers or $26,175.00, plus the costs of filing this action of $350.00, for a total of $26,525.00, and (iii) granting such further relief as to which the Plaintiff may be entitled.

## COUNT VIII

### (Unjust Enrichment)

70. Plaintiff hereby incorporates by reference paragraphs 1 – 45, paragraphs 47 – 48, paragraphs 50 – 51, paragraphs 53 – 55, paragraphs 57 – 59, paragraphs 61 – 62, paragraphs 64 – 65 and paragraphs 67 – 69 above as if fully rewritten and restated at length herein

71. To the extent Plaintiff is not entitled to recovery of the funds under other Counts of this Complaint, she lacks an adequate remedy at law.

72. The Debtor conferred a benefit upon Wabash by receiving the benefit of the Wabash Transfers in the amount of $26,175.00 and retaining same despite failing to provide the Debtor with any equivalent exchange of value.

73. Under these circumstances, it is inequitable for Wabash to retain the benefit of the Wabash Transfers without paying equivalent value to the estate.

WHEREFORE, Plaintiff respectfully demands that judgment be entered in favor of Plaintiff and against Wabash (i) awarding to Plaintiff an amount no less than $26,175.00, (ii) awarding Plaintiff her reasonable attorneys' fees and costs herein, including fees and costs incurred in connection with any appeal or further bankruptcy proceedings in the event she is the prevailing party in this adversary proceeding, and (iii) awarding Plaintiff any such further relief as may be deemed appropriate.

Respectfully submitted,
**JOHNSON LAW FIRM, P.A.**

/s/ Eugene H. Johnson
Eugene H. Johnson, Esq.
Florida Bar No. 0032105
Lauren W. Box, Esq.
Florida Bar No. 0106242
100 North Laura Street, Suite 701
Jacksonville, Florida 32202
(904) 652-2400 Telephone
ehj@johnsonlawpa.com
lauren@johnsonlawpa.com

*Attorneys for Plaintiff, Angela Welch, Chapter 7 Trustee*

EXHIBIT "A"

# COVENANT NOT TO COMPETE

THIS COVENANT NOT TO COMPETE (the "COVENANT"), is hereby made and entered into on this 1 day August of 2022. By and between:

**WABASH PIZZERIA & ICE CREAM COMPANY LLC**
BERT NEUMAN AND LILIYA NEUMAN
**(The "Seller and old Owners")**

**And**

**Jonathan Walker**
**(The "Buyer and new Owner")**

## COVENANT

WHEREAS, SELLER has been engaged in the ownership and operation of that certain business commonly known as **"WABASH PIZZERIA & ICE CREAM COMPANY LLC."** located at 217 N Wabash Ave Lakeland FL 33815; and

WHEREAS, SELLER, has agreed to sell substantially all the tangible and intangible assets of the "BUSINESS" to BUYER; and

WHEREAS, in connection with the BUYER'S purchase of the BUSINESS, BUYER desires to restrict SELLER from competing with the BUSINESS in accordance with the terms hereinafter set forth.

NOW THEREFORE, in consideration of Sixty Nine Thousand Dollars ($69,000.00) Dollars and other good and valuable consideration, in hand paid to SELLER by BUYER and other mutual covenants, conditions, and agreements hereinafter contained, the parties agree as follows:

1. For a period of **THREE (3)** years from and after the date of this Covenant, SELLER, **WABASH PIZZERIA & ICE CREAM COMPANY LLC** individually shall not be involved in any manner whatsoever in any similar business in direct or indirect competition with the BUSINESS, in any capacity whatsoever, if such activity be physically located with the following described restricted area, directly or indirectly, including but not limited to owner, partner, shareholder, equity participant, officer, director, employee, or independent contractor within a **FIFTY(50)** mile radius of the existing BUSINESS, which restricted area is hereby acknowledged and agreed by the parties, as constituting the market of BUSINESS, products and services. Additionally, SELLER hereby agrees that SELLER shall not solicit existing or potential customers of the BUSINESS within the restricted area; nor solicit or seek to employ employees of the BUSINESS. SELLER further hereby agrees that SELLER shall not advertise in any newspaper or other media of any nature whatsoever that SELLER has sold the BUSINESS to BUYER, or that SELLER is no longer associated with the BUSINESS. The parties acknowledge that this Covenant has been separately bargained for, and the primary objective of this Covenant is to eliminate

competition within the specified trade area and thereby provide protection of the beneficial enjoyment of the goodwill acquired, which is a no severable capital asset of the BUSINESS. In the event of a breach by the SELLER of the provisions of this Covenant, BUYER shall be entitled to an injunction restraining SELLER from such breach or reasonably threatened anticipatory breach. Nothing herein shall be construed as prohibiting BUYER from pursuing any other remedies available to BUYER for such breach or threatened breach, including the recovery of damages from SELLER, notwithstanding any contrary provision contained herein.

2. Both parties hereby agree that all covenants and warranties contained in this Covenant shall survive closing on the sale and purchase of the BUSINESS and shall inure to the benefit of and be binding upon the parties and their respective heirs or legal representatives. In the event of any litigation relating to the herein transaction, the prevailing party shall recover costs and attorneys' fees thereby incurred from the non-prevailing party, including , but not limited to those associated with the legal advice and consultation prior to commencement of litigation, mediation, arbitration, bankruptcy, and appellate proceedings. The parties further agree that in the event a court of competent jurisdiction should determine that either or both the time/distance restrictions herein contained are unreasonable, arbitrary or against public policy the herein Covenant shall not be invalidated, but the restriction(s) viewed by such Court as overly broad, shall be reduced to a level deemed reasonable.

3. This Covenant may be assigned to subsequent owners of this business.

IN WITNESS WHEREOF the parties hereto have hereby executed this Covenant on the day and year first above written.

Signed, Sealed and Delivered
in the presence of:

"SELLER"

**WABASH PIZERRIA & ICE CREAM COMPANY LLC**

BERT NEUMAN

LILIYA NEUMAN

"BUYER"

**Jonathan Walker**

# SALES AND PURCHASE AGREEMENT

THIS Agreement made and entered into this the 1st day of August, 2022, by and between BERT NEUMAN AND LILIYA NEUMAN.

WHEREAS, JONATHAN WALKER desires to purchase all of the right, title and interest which BERT NEUMAN AND LILIYA NEUMAN have or claim to have in WABASH PIZZERIA & ICE CREAM COMPANY LLC, including all issued and outstanding Ownership of the Company held by BERT NEUMAN AND LILIYA NEUMAN;

WHEREAS, 100% OWNERSHIP desire to sell all of their ownership in the Company to JONATHAN WALKER

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. Sale of Limited Liability Company Interest. Subject to the conditions precedent set forth in-Paragraph 4 hereof and to the provisions of Paragraph 5 hereof, WABASH PIZZERIA & ICE CREAM COMPANY LLC does hereby agree to sell, convey and transfer to JONATHAN WALKER does hereby agree to purchase all title and interest in the Company, including the 100 ownership of the Company.

2. Purchase Price. The total purchase price to be paid by JONATHAN WALKER for all Ownership and Limited Liability Company assets, good will and any other assets of the company shall be $69,000.00. The purchase price allocated shall be $69,000.00.

3. Conditions Precedent to Sale. The obligation of JONATHAN WALKER to purchase the interest of WABASH PIZZERIA & ICE CREAM COMPANY LLC in the Company pursuant to this Agreement is specifically subject to and conditioned on the following:

(a) Review of Operating Agreement and conducted legal representative satisfactory to JONATHAN WALKER;

(b) Execution by BERT NEUMAN AND LILIYA NEUMAN on or before the Closing Date of a resignation of all positions held with the Company substantially in the form of Exhibit "A" hereto;

(c) Removal of any and all authority of WABASH PIZZERIA & ICE CREAM COMPANY LLC, on or before the Closing Date to conduct banking transactions on behalf of the Company, including, to signing checks, withdrawing corporate funds or borrowing funds on behalf of the Company;

(d) Delivery to JONATHAN WALKER., on or before the Closing Date, of all assets and records, of any nature, belonging or related to the Company, including, but not limited to, accounting records, banking records, checkbooks, correspondence, deeds, files, financial records, minute and statements.

4. Warranties. As of the date hereof and on the Closing Date, AUGUST 1, 2022 dividedly and collectively, warrant and represent as follows:

(a) WABASH PIZZERIA & ICE CREAM COMPANY LLC have full right, power and legal authority to sell, convey and transfer their respective ownership and that said ownership, upon conveyance to BERT NEUMAN AND LILIYA NEUMAN., shall be legally issued, fully paid and non-assessable;

(b) Except for the ownership of the Company transferred hereunder, BERT NEUMAN AND LILIYA NEUMAN warrant that there exists no other owners, or of any other class or description, or any warrants or rights of any kind to the issuance of or title to any ownership of the Company; and that, except as set forth

in the Operating Agreement between the parties hereto, dated AUGUST 1, 2022 the owned by BERT NEUMAN AND LILIYA NEUMAN and the owned to be conveyed to JONATHAN WALKER. Hereunder is not subject to any voting trust or agreement or any other agreement among owners restricting or prohibiting the transfer thereof or in any other manner affecting said ownership.

(c) That JONATHAN WALKER have waived any and all rights which each of them may have under the Operating Agreement between the parties, dated AUGUST 1, 2022, and they consent to the transfer and conveyance contemplated by this Agreement notwithstanding any of the provisions or restrictions contained in said Operating Agreement;

(d) That there are no pending or threatened action, claim or proceeding affecting the Company before any court, governmental agency or arbitrator, which may materially adversely affect the financial condition of the Company nor, to the best of their knowledge, is there any basis for any such actions, claims or proceedings;

(e) That the Company is in compliance with all applicable state, federal and local laws rules, regulations and orders including, but not limited to, the payment of all taxes;

(f) That the financial statements of the Company fairly and accurately set forth the financial condition of the Company as of their date, are in accordance with generally accepted accounting principles consistently applied and since AUGUST 1, 2022 there has been no material adverse change in the financial condition, results of operations, properties, business or prospects of the Company;

(g) That the Company does not have any indebtedness or other liabilities outstanding

other than those set forth in Exhibit "B" attached hereto and incorporated herein;

5. Closing Date. The Closing Date shall be AUGUST 1, 2022. At the Closing, all documents shall be executed, and funds delivered as is necessary to complete such purchase and WABASH PIZERRIA & ICE CREAM COMPANY LLC, hereby irrevocably appoints DC ACCOUNTING SERVICES PA as their attorney in fact for the sole purpose of surrendering the Operating Agreement and Articles of Organization to JONATHAN WALKER and for making the necessary ownership transfers on the books of the Company.

6. The parties shall, contemporaneously herewith or hereafter, execute such additional documents as may be reasonably necessary to evidence or effectuate the terms of this Agreement.

7. No action or failure to act by parties hereto shall constitute a waiver of any right or duty afforded them hereunder, nor shall any such action or failure to act constitute an approval of or acquiescence in any breach hereunder, except as may be specifically agreed in writing.

8. This Agreement, and any of its terms, conditions and provisions may be modified, amended, altered, supplemented, added to, canceled or terminated only by mutual agreement in writing signed by all the parties hereto.

9. This Agreement constitutes the entire agreement between the parties and supersedes and replaces any and all other negotiations, conversations, understandings and/or agreements, written, oral, implied or otherwise.

10. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original hereof, but all such multiple counterparts shall constitute but a single

instrument.

The rights, obligations, guarantees, warranties, representations and agreements set forth in this Agreement shall survive the closing of the sale contemplated by this Agreement and the payment of funds hereunder shall not be affected by any investigation, audits, and/or searches performed by or on behalf of WABASH PIZZERIA & ICE CREAM COMPANY LLC prior to said closing, and shall be binding on and inure to the benefit of the heirs, personal representatives, successors and assigns of all the parties hereto.

If it becomes necessary for any party to enforce this contract by employing an attorney, such party shall be entitled to collect reasonable attorney's fees and court costs from the non-performing party.

This Agreement shall be governed by the laws of the State of FLORIDA, notwithstanding the fact that one or more of the parties to this Agreement is now or may become a resident or citizen of a different state. The invalidity, illegality, or unenforceability of any particular provision of this Agreement shall not affect the other provisions, and this Agreement shall be construed in all respects as if such invalid, illegal, or unenforceable provision had been omitted.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the date set forth above.

SELLER:

BERT NEUMAN

LILIYA NEUMAN

BUYER:

JONATHAN WALKER

***Oath or Affirmation:***

Pursuant to Section 117.05(13)(a), Florida Statutes, the following notarial certificate is sufficient for an oath or affirmation:

STATE OF FLORIDA
COUNTY OF Pasco

Sworn to (or affirmed) and subscribed before me by means of [✓] physical presence or [_] online notarization, this (1st) day of ( August ), (2022), by (Bert Neuman).

DENISSE MEDINA
MY COMMISSION EXPIRES NOVEMBER 6, 2025
#HH 150096
Bonded thru Notary Public Underwriters
NOTARY PUBLIC, STATE OF FLORIDA

(NOTARY SEAL)

(Signature of Notary Public-State of Florida)
(Name of Notary Typed, Printed, or Stamped)

Personally Known _____ OR Produced Identification ID
Type of Identification
Produced ________________________________

EXHIBIT "B"

WALKER PIZZA COMPANY LLC | Account # 1863 | July 1, 2022 to July 31, 2022

## Check images

**Account number:** **1863**
Check number: 115 t: $6,900.00

WALKER PIZZA COMPANY LLC
810 JESSANDA CIR
LAKELAND, FL 33813-2681

1153

63-4/530 FL
25241

Date 7-13-2022

Pay To The Order Of Wabash Pizzaria & Ice Cream Co. $ 6,900.00

— Six Thousand Nine Hundred & 00/100 Dollars

BANK OF AMERICA

ACH R/T 063100277

For Down Payment 10% For Business



EXHIBIT "C"

WALKER PIZZA COMPANY LLC | Account # 1863 | August 1, 2022 to August 31, 2022

## Check images

**Account number: 1863**

Check number: 115 u t: $62,100.00

WALKER PIZZA COMPANY LLC
610 JESSANDA CIR
LAKELAND, FL 33813-2681
1154
Date 8-1-22
Pay To The Order Of Bert + Liliya Newman $ 62,100.00
- Sixty-Two Thousand + One Hundred + 00/100 Dollars
BANK OF AMERICA
For Purchase - Wabash Pizzeria + Ice Cream
1863

Check number: 1155 | Amount: $1,575.00

WALKER PIZZA COMPANY LLC
610 JESSANDA CIR
LAKELAND, FL 33813-2681
1155
Date 8-5-2022
Pay To The Order Of - Sterling Plaza - $1575.00
- One Thousand + Seventy-Five + 00/100 Dollars
BANK OF AMERICA
For Rent: Wabash Pizzeria + Ice Cream
1863

Check number: 1156 | Amount: $3,740.53

WALKER PIZZA COMPANY LLC
610 JESSANDA CIR
LAKELAND, FL 33813-2631
1156
Date 8-5-22
Pay To The Order Of - Bert Newman - $ 3740.53
- Three Thousand Seven Hundred + Forty + 53/100 Dollars
BANK OF AMERICA
For - Coffee Maker
1863

Check number: 1157 | Amount: $535.00

WALKER PIZZA COMPANY LLC
610 JESSANDA CIR
LAKELAND, FL 33813-2681
1157
Date 8-10-22
Pay To The Order Of Jamie Barber $ 535.00
- Five Hundred Thirty-Five + 00/100 Dollars
BANK OF AMERICA
For - Coin Machine
1863